BOARD OF TRANSPORTATION v. MAUDE REVIS AND HUSBAND, J. C. REVIS; BERLON HENSLEY AND WIFE, SUZANNE MILLER HENSLEY

No. 7828SC392

(Filed 6 March 1979)

**Eminent Domain § 6.1— amount of compensation—evidence of original purchase price—physical changes in the property**

In an action to determine compensation due to defendants for the condemnation of a portion of their property for highway purposes, physical changes in the property during the six-year period the property had been owned by defendants were not so extensive so as to render inadmissible evidence of the original purchase price of the property where those changes consisted of the placement of new roofs on a seven-unit motel and a store on the property, the placement of new siding, new floor coverings and new tile in the motel bathrooms, the repainting of all motel rooms and the store, the addition of gas

heating units to the motel rooms, the addition of a sidewalk in front of the motel, and the installation of storm drains.

APPEAL by defendants from *Lewis, Judge.* Judgment entered 24 January 1978 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 6 February 1979.

This is an action pursuant to Article 9, Chapter 136, North Carolina General Statutes for jury determination of just compensation due defendants for lands condemned and appropriated by the State for highway purposes. The action was instituted on 13 January 1975 in Superior Court, Buncombe County.

The property in question was located in Buncombe County, between N. C. Highway 81 and the Swannanoa River, containing in excess of one acre and having frontage along N. C. Highway 81 in excess of 1,000 feet. Seven motel units were located on the property and were taken by the plaintiff, along with approximately 22,000 square feet of land, leaving defendants with a grocery store building and a produce building on the remaining property. Defendants also alleged that they lost approximately one half of the space normally used for parking in connection with the business. Defendant Berlon Hensley continues to operate the grocery and fruit stand but is no longer able to operate the motel.

The only facts pertinent to this appeal relate to the question of value.

Defendants offered the testimony of Claude DeBruhl, a licensed real estate broker and experienced in appraisal work since 1950. In his opinion, the value of the land and improvements on 13 January 1975 was $64,376. His opinion of the value immediately after the taking of the property by plaintiff was $29,343. He therefore believes defendants suffered damages of $35,033.

Berlon Hensley, one of the defendant owners and the operator of the business located on the property, testified that his opinion of the value of the property before the taking was $77,500 and that the property was only worth $30,000 after the taking, with resulting damages of $47,500. On cross-examination, this witness testified, over objection by the defendants, that the purchase price of the property in 1969 was over $30,000 but less than $40,000. Defendants objected on the basis that the purchase of the

property was too remote in time from the taking and that improvements had been made to the property.

Elizabeth Hensley, who is married to Berlon Hensley's uncle and is a property owner in the vicinity, testified that in her opinion the property was worth $90,000 before the taking and $42,500 thereafter, with damages amounting to $47,500.

Doug Henson testified that he is president of a construction company and familiar with the property and land values in the area. His opinion of the fair market value of the property immediately before the taking was $70,000 and $30,000 after the taking, with a difference of $40,000.

The plaintiff presented several witnesses who gave testimony about the value of the property. Francis J. Naeger testified that he had been engaged in the business of real estate appraisal for approximately 15 years. In his opinion, the value of the property just prior to 13 January 1975 was $44,600. Immediately after the taking, he believed the property was worth $28,000 with a damage figure of $16,600.

Charlie Torian testified that he is in the business of real estate appraisal and brokerage. His opinion of the value of the property just prior to the taking was $38,075, with the value of the property immediately after the taking being $20,955, the resulting damage being $17,120.

The following issue was submitted to the jury: "What sum are the defendants, . . ., entitled to recover from the plaintiff, Board of Transportation, for the appropriation of a portion of their property for highway purposes on the 13th day of January, 1975."

The jury answered the issue in the amount of $20,000. From judgment entered thereon, defendants appealed.

*Attorney General Edmisten, by Senior Deputy Attorney General R. Bruce White, Jr. and Assistant Attorney General Alfred N. Salley, for the plaintiff appellee.*

*Bennett, Kelly & Cagle, by Robert F. Orr, for defendant appellants.*

CARLTON, Judge.

The sole question for determination is whether the trial court property admitted into evidence the purchase price of the property.

On cross-examination, one of the defendants testified, over objection of defendants' counsel, that the purchase price of the property in 1969 was over $30,000 but less than $40,000. At the time of the ruling, the court advised that counsel for defendants would be permitted to reexamine the witness "on the phases" not covered in questions by counsel for plaintifff. Immediately following this testimony, counsel for defendants reexamined the witness and elicited testimony which tended to show that during the six-year period the property had been owned by the defendants, a new roof had been placed on the motel and store, and that new siding, new floor covering and new tile had been placed in all the bathrooms of the motel. He also testified that all the motel rooms had been repainted and gas heating units added. He also testified that the store had been repainted, that a sidewalk had been added in front of the motel and storm drains had been installed to take care of overflow water.

Defendants' contention is that these represented major physical changes to the property during the six-year period and that the original purchase price was therefore an unfair criterion for establishing the value of the property at the time of the taking by the State and that the trial court's ruling had a prejudicial effect on defendants' case. We disagree.

We review the established rules in North Carolina governing the competency and admissibility of evidence of purchase price paid by a condemnee for land later appropriated for public use, in a proceeding to establish just compensation for the taking:

(1) It is competent as evidence of market value to show the price at which the property was bought if the sale was voluntary and not too remote in point of time.

(2) When land is taken by condemnation, evidence of its value within a reasonable time before the taking is competent on the question of its value at the time of the taking.

(3) Such evidence must relate to the value of the property sufficiently near the time of taking as to have a reasonable tendency to show its value at the time of its taking.

(4) The reasonableness of the time is dependent upon the nature of the property, its location, and the surrounding circumstances. Some of the circumstances to be considered are the changes, if any, which have occurred between the time of purchase by the condemnee and the time of taking by the State, including physical changes in the property taken, changes in its availability for valuable uses, and changes in the vicinity of the property which might have affected its value.

(5) The fact that some changes have taken place does not *per se* render the evidence incompetent. If the changes have been so extensive that the purchase price does not reasonably point to, or furnish a fair criterion for determining value at the time of the taking, when purchase price is considered with other evidence affecting value, the evidence of purchase price should be excluded.

(6) The ultimate criterion is whether, under all the circumstances, the purchase price fairly points to the value of the property at the time of the taking.

The foregoing rules have evolved from numerous decisions of our Supreme Court and this Court, including the following: *North Carolina State Highway Commission v. Moore*, 3 N.C. App. 207, 164 S.E. 2d 385 (1968); *Highway Commission v. Coggins*, 262 N.C. 25, 136 S.E. 2d 265 (1964); *Redevelopment Commission of Winston-Salem v. Hinkle*, 260 N.C. 423, 132 S.E. 2d 761 (1963); *State Highway and Public Works Commission v. Hartley*, 218 N.C. 438, 11 S.E. 2d 314 (1940); *Palmer v. North Carolina State Highway Commission*, 195 N.C. 1, 141 S.E. 338 (1928).

Applying the foregoing rules to the facts disclosed by the record before us, we note that no question has been raised as to voluntariness of the purchase of the property by defendants. Moreover, defendants do not contend that there were changes in the nature of the property, its availability for valuable usage, or changes in the vicinity of the property which might have affected its value. Defendants point solely to physical changes in the property itself.

The question then becomes whether the changes have been so extensive that the purchase price does not reasonably point to, or furnish a fair criterion for determining value at the time of the taking, when purchase price is considered with other evidence affecting value. We do not believe the changes were so extensive.

Surely it is not unusual for a commercial building eventually to need a new roof and repainting. These are ordinary necessities resulting from normal depreciation. Nor do we believe that the addition of a sidewalk in front of a seven room motel and the installation of gas heat and storm drains represent "extensive" changes to the property. Indeed, such improvements would be classified under modern business practices as normal and necessary for the property to maintain its value in the market place.

We also note that plaintiff's lead witness testified that the after taking value of the property was $28,000. This is only $2,000 difference from the after taking value established by two of defendants' witnesses and only $1,343 from the after taking value established by defendants' lead witness. In other words, there is relatively little difference in the after taking value established by witnesses for both parties. The major differences established by the witnesses for both parties were in the value of the property before the taking and, obviously, before the improvements relied on by defendants were made. Moreover, the jury's verdict established a damage figure in excess of the figure given by both of the witnesses for the plaintiff. It is obvious that the jury considered the other relevant factors affecting value as well as the evidence of the purchase price. Finally, we note that the trial court carefully put the evidence of purchase price in proper context at the time of its admission by allowing defendants' counsel, by redirect examination, to question the defendant concerning the improvements made.

In the trial below we find

No error.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.